NO. 07-05-0243-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

FEBRUARY 14, 2006

______________________________

ARTURO LOPEZ, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 213TH DISTRICT COURT OF TARRANT COUNTY;

NO. 094065D; HONORABLE GENE GRANT, JUDGE

_______________________________

Before QUINN, C.J., and REAVIS and HANCOCK, JJ.

OPINION

After the trial court denied his motion to suppress, appellant Arturo Lopez pled guilty to, and was convicted of, possession of cocaine with intent to deliver.  After pleading true to the enhancement paragraph, he was sentenced to 15 years confinement.  Presenting a sole issue, appellant asserts the trial court erred in overruling his motion to suppress evidence based on lack of probable cause to search the locked gas compartment of his vehicle.  We affirm.

The testimony presented at the motion to suppress hearing established the following facts.  While on patrol one evening, Officer Jeffrey Coffey stopped appellant because his car displayed blue turn signals in violation of the Transportation Code.  
See
 Tex. Transp. Code Ann. § 547.324(d) (Vernon 1999).  Appellant was accompanied by an adult passenger in the front seat and a young child in the back seat.  Coffey approached the driver’s side and asked appellant for his driver’s license and insurance card; he had neither.  A check revealed no outstanding warrants and that appellant possessed a Texas identification card, but no Texas driver’s license.  While in the process of issuing a citation to appellant, Officer Coffey approached the passenger’s side of the car to determine if the passenger could take custody of the vehicle once the stop was completed.     

Initially, the passenger gave a false name.  He quickly admitted doing so and was arrested for failure to identify himself and placed in the back of the patrol car.  Appellant and the child in the back seat were asked to exit the car to conduct a search incident to the passenger’s arrest.  Coffey began with a search of the driver’s side and, as he proceeded around the rear of the vehicle to the passenger’s side, observed a “tiny bit” of a plastic baggie in the crease around the gas cap compartment located on the rear driver’s side.

Believing he had probable cause, Coffey entered the car and pulled the release lever to disengage the gas cap cover without appellant’s consent.  He observed but did not remove at that time the plastic baggie containing what appeared to be a white powder located inside the gas compartment.  The record at the suppression hearing does not demonstrate when, or under what circumstances, the baggie was seized.

Presenting a sole issue, appellant challenges the denial of his motion to suppress asserting a lack of probable cause to search the locked gas compartment.  He maintains the search was constitutionally invalid as either a search incident to the passenger’s arrest or a search pursuant to the automobile exception.  The State contends the seizure of the narcotics was legitimate under both the automobile exception and the plain view doctrine.  The discrete question presented for our review is whether the officer had probable cause to open the locked gas cap compartment without consent or a search warrant. 

A trial court's ruling on a motion to suppress is reviewed for abuse of discretion.  Balentine v. State, 71 S.W.3d 763, 768 (Tex.Cr.App. 2002).  In reviewing a trial court’s ruling on a motion to suppress, we afford almost total deference to the court's determination of historical facts when supported by the record. Guzman v. State, 955 S.W.2d 85, 89 (Tex.Cr.App. 1997).
  However, for mixed questions of law and fact, which do not fall within this category, an appellate court may conduct a 
de novo
 review of the trial court's ruling.  Hernandez v. State, 957 S.W.2d 851, 852 (Tex.Cr.App. 1998) (citing 
Guzman
, 955 S.W.2d at 89).  In other words 
de novo
 review applies when the facts are undisputed.  State v. Jennings, 958 S.W.2d 930, 932 (Tex.App.–Amarillo 1997, no pet.).

When, as here, the trial court failed to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record.  
See
 Carmouche v. State, 10 S.W.3d 323, 328 (Tex.Cr.App. 2000).  At a suppression hearing, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. 
State v. Ross, 32 S.W.3d 853, 855-56 (Tex.Cr.App. 2000). 
 
Additionally, questions involving reasonable suspicion and probable cause are reviewed 
de novo
. 
 See
 Loesch v. State, 958 S.W.2d 830, 832 (Tex.Cr.App. 1997).  Finally, if the trial court’s decision is correct on any theory of law applicable to the case, it will be sustained.  
Ross
, 32 S.W.3d at 855-56. 
 

A warrantless search is per se unreasonable subject only to a few specifically established and well-delineated exceptions.  Horton v. California, 496 U.S. 128, 133, n.4, 110 S.Ct. 2301, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).  A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his person or property.  
Id.
, (citing United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). 

Search Incident to Arrest

A search incident to arrest is limited to an arrestee’s person and the area in his immediate control to prevent him from obtaining possession of a weapon or concealing or destroying evidence.  Chimel v. California, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).  In New York v. Belton, 453 U.S. 454, 459-60, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), to establish a workable rule regarding the definition of the area within an arrestee’s immediate control, the Court held
 that when an officer makes a lawful custodial arrest of the occupant of a vehicle, he may, contemporaneously incident to that arrest, search the passenger compartment of the vehicle.
  See also
 State v. Ballard, 987 S.W.2d 889, 892 (Tex.Cr.App. 1999).  A lawful search also includes the contents of containers found within the passenger compartment of the vehicle.  
Belton
, 453 U.S. at 460-61.

According to Coffey’s testimony on direct examination, after the passenger was arrested and placed in the patrol car, he began his search of the interior of the car on the driver’s side.  During cross-examination, Coffey indicated an intent to search the passenger’s immediate wingspan.  No incriminating evidence was discovered in the interior of the car.  It was after this search that Coffey noticed the plastic baggie in the crease of the gas cap compartment and investigated further to discover the cocaine.  Coffey testified the gas cap compartment was located outside the vehicle on the rear driver’s side.  Concluding that 
Chimel
 and 
Belton
 do not validate the search of the gas cap compartment, we next consider the automobile exception to warrantless searches.

Automobile exception

In 1925, the Supreme Court established the automobile exception to the Fourth Amendment’s warrant requirement in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).  It held that a warrantless search of a vehicle stopped by officers with probable cause to believe the vehicle contained contraband did not run afoul of the Fourth Amendment.  
Carroll
 distinguished a search of dwellings or structures with a search of movable vessels and rationalized that mobility justified a warrantless search.  
Id
. at 151;  
see also
 Powell v. State, 898 S.W.2d 821, 827 (Tex.Cr.App. 1994).  The Court then addressed under what circumstances a warrantless search was reasonable and concluded probable cause was necessary.
  Carroll
, 267 U.S. at 156.  

Then, in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the Court found no distinction, given probable cause, between carrying out an immediate search of a vehicle without a warrant or seizing and holding the vehicle and conducting a delayed search.  
Id.
 at 52.  In 
Chambers
, witnesses to an armed robbery described the vehicle, its four occupants, and some of their clothing to officers.  
Id
. at 44.  Shortly after details were broadcast over the police radio, officers stopped a vehicle answering the description.  The occupants were arrested and the vehicle was driven to the police station and thoroughly searched.  
Id.
  Evidence material to the robbery was discovered and introduced at trial.  
Id
. at 45.  

The Supreme Court reasoned that probable cause is determined at the time of the stop and if an immediate search is valid, so too is a later search.  
Id.
 at 51-52.  The justification to conduct a warrantless search does not vanish once the vehicle is immobilized.  
See
 Michigan v. Thomas, 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982).   

In 1982, the Supreme Court clarified the scope of a 
Carroll
 automobile search and held that officers may conduct a search of a vehicle that is as thorough as a magistrate could authorize in a warrant describing the place to be searched.  
See
 United States v. Ross, 456 U.S. 798, 800, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).  Ross was stopped by officers based on a reliable informant’s tip that he was selling narcotics stored in the trunk of his car.  
Id.
 at 801.  A warrantless search of the interior of the car revealed a bullet in the front seat and a pistol in the glove compartment.  Ross was arrested and handcuffed.  Thereafter, a detective took his keys and opened the trunk of the car to reveal a closed brown paper bag which the detective opened to discover a number of bags containing white powder, later determined to be heroin.  He replaced the bag, closed the trunk, and drove the car to the police station. 
 
In addition to the brown paper bag, a thorough search revealed a red zippered leather pouch which contained $3,200 in cash.  
Id.
 

The Court explained that the scope of a warrantless search of a vehicle is defined by the object of the search and the places in which there is probable cause to believe it may be found.  
Id
. at 824.  It held that if probable cause exists to believe contraband is concealed in a lawfully stopped vehicle, officers are justified in conducting a probing search of compartments and containers within the vehicle whose contents are not in plain view and which may conceal the object of the search.  
Id. 
at 825.
 

A different line of cases developed regarding luggage, bags, and other closed containers under United States v. Chadwick, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).  In 
Chadwick
, federal agents had probable cause to believe that marihuana was contained in a 200 pound padlocked footlocker being transported by train.  The locker was carried through the train station to a waiting car.  As the defendants lifted the locker into the trunk of the car, they were arrested.  The locker was seized, removed to a secure place, and searched without a warrant.  
Id.
 at 4.  The Court recognized that a person’s expectation of privacy in luggage is substantially greater than in a vehicle.  
Id
. at 13.  It rejected the argument that the search of the footlocker was analogous to a warrantless search of an automobile because it also had mobile characteristics and instead, reaffirmed the principle that closed containers and packages may not be searched without a warrant.  
Id.
  

The 
Chadwick
 rule was extended to a suitcase being transported in the trunk of a car in Arkansas v. Sanders, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979).  Officers received a tip that the defendant would be arriving at the airport with a suitcase containing marihuana.  They observed the defendant place his suitcase in the trunk of a taxi, enter the taxi, and drive away.  
Id.
 at 755.  Officers pursued and stopped the taxi and seized and searched the suitcase without a warrant.  
Id
.  The Court was presented with the task of determining whether the search of the suitcase fell under the 
Chadwick 
or 
Chambers/Carroll
 rules.  
Id.
 at 757.
(footnote: 1)  The Court found no justification for applying the automobile exception
 and, instead, emphasized the heightened expectation of privacy in personal luggage and concluded its presence in a car did not diminish the owner’s expectation.  
Id
. at 764-65.  It held the warrant requirement of the Fourth Amendment applied to personal luggage taken from an automobile.  
Id
. at 766.

The dichotomy presented over the years was that if probable cause existed to search a car, then the entire car, including any closed containers
 could be searched, but if probable cause existed only as to a container in a car, the container could be held but not searched without a warrant.  Presented with the discrepancy between the 
Chadwick
 and 
Ross
 rules and the confusion for law enforcement,
 in California v. Acevedo, 500 U.S. 565, 576, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991), the Court revisited the different lines of cases and held the Fourth Amendment does not compel separate treatment for an automobile search that extends only to a container within the car. 

The Court re-examined the privacy protections of the 
Chadwick
-
Sanders
 line of cases and concluded any protection was minimal because more than likely a warrant would be forthcoming to search the container that had been seized.  
Id.
 at 575.  It interpreted 
Carroll
 as providing one clear-cut rule to govern automobile searches and eliminated the warrant requirement for closed containers.  
Id
. at 580.  That rule is that, given probable cause to believe the presence of contraband or evidence, officers may search an automobile and the containers within it without a warrant.  
Id
. 

The foundation for a warrantless search of an automobile is probable cause.  Probable cause has been defined as the sum total of layers of information, and not merely individual layers and considerations, that a reasonable and prudent man acts upon.  
See
 Estrada v. State, 154 S.W.3d 604, 609 (Tex.Cr.App. 2005).  It exists when facts and circumstances within the officer’s knowledge
 or 
about which he has reasonably trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense was or is being committed.  (Emphasis added).  
See 
Torres v. State, No. PD-1322-04, 2005 WL 3310462, at *2 (Tex.Cr.App. Dec. 7, 2005).
(footnote: 2)  Additionally, probable cause is determined by the totality of the circumstances.  Amores v. State, 816 S.W.2d 407, 413 (Tex.Cr.App. 1991).    

According to the testimony at the suppression hearing, appellant had purchased the car just two weeks earlier from a neighbor and had been in possession of it for one week.  Officer Coffey testified he was working with the Violent Crime Reduction Task Force and that in his knowledge and experience, appellant was stopped in a high crime area for narcotics.
(footnote: 3)  Regarding the “tiny bit” of a plastic baggie in the crease of the gas cap compartment, Coffey testified his suspicion was aroused because there was no reason for a baggie to be in that location.  Based on his training and experience, he knew the gas cap compartment was an area used for concealing narcotics.  

On cross-examination, Coffey testified his search of the interior of the car revealed no incriminating evidence.  Additionally, he testified that neither appellant nor the passenger appeared to be under the influence.  The record establishes that no furtive gestures were made, and there was no attempt to conceal anything at the time of the stop.  Coffey admitted he had nothing articulable to suspect narcotics.

Based on Coffey’s testimony that appellant was stopped in a high crime area for narcotics and that in his experience a car’s gas cap compartment is an area for concealing them, he had probable cause to believe an offense was being committed.  We conclude the trial court’s implied findings are supported by the record and find no abuse of discretion in the trial court’s denial of appellant’s motion to suppress.

Plain View Doctrine-Gas Cap Compartment

Moreover, based on the following analysis, under the plain view doctrine, the officer had probable cause that the plastic baggie presented  incriminating evidence.  A thorough search revealed only one unpublished case involving the warrantless search of a car’s gas cap compartment.  
See
 Parker v. State, No. 01-03-00365-CR, 2004 WL 909193, *2-3 (Tex.App.–Houston [1st Dist.] Apr. 29, 2004, no pet.) (not designated for publication).
(footnote: 4)
 It is well established that under certain circumstances officers may seize evidence in plain view without a warrant.  Coolidge v. New Hampshire, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). 
 Plain view alone, however, is never enough to justify the warrantless seizure of evidence.  
Id. 
at 468.  Two requirements must be satisfied.  They are: (1) the officer must have a prior justification or otherwise properly be in a position from which he can view the area, and (2) it must be immediately apparent to the officer that the item may be evidence of a crime, contraband, or otherwise subject to seizure.  
Id
. at 465-70.
(footnote: 5)
 The plain view doctrine involves no invasion of privacy and, thus, cannot be considered an exception to the Fourth Amendment warrant requirement.  
See
 Texas v. Brown, 460 U.S. 730, 738-39, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); 
Walter v. State, 28 S.W.3d 538, 541 (Tex.Cr.App 2000).  If an item is in plain view, neither its observation nor its seizure involves any invasion of privacy.  
Walter
, 28 S.W.3d at 541.  

In
 Brown
, the Court was confronted with the “immediately apparent” requirement and noted the phrase “was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the ‘plain view’ doctrine.”  460 U.S. at 741.  Brown was stopped as part of a routine driver’s license checkpoint.  
Id
. at 730.  As the officer shined his flashlight into the car, he noticed Brown take his hand out of his right pants pocket.  Between his two middle fingers he was holding an opaque, green party balloon, knotted about one-half inch from the top.  He let the balloon fall to the seat beside his leg and reached across to open the glove compartment to look for his license.  
Id. 
 The officer noticed small plastic vials containing loose white powder and an open bag of party balloons in the glove compartment.  After Brown was asked to exit the vehicle, the officer picked up the green party balloon and noticed a powdery substance within the tied-off portion.  After Brown was arrested, the officers discovered other contraband.  
Id.

The Court of Criminal Appeals concluded the officer had to 
know
 that “incriminating evidence was before him when he seized the balloon.”  
See
 Brown v. State, 617 S.W.2d 196, 200 (Tex.Cr.App. 1981), 
rev’d
, 460 U.S. 730 (1983).  The Supreme Court, however, concluded the opaque texture of the balloon was irrelevant and its distinctive character spoke volumes as to its contents, especially to the trained eye of the officer.  
Brown
, 460 U.S. at 743.  Also, the officer testified he had knowledge that balloons tied in the manner of the one possessed by Brown were used to package narcotics.  Other evidence from Brown’s car suggested he was involved in possession of contraband.  
Id.
 at 743-44.  Without resolving whether probable cause was required to invoke the plain view doctrine, the Court decided that what was required to satisfy the immediately apparent prong was a “practical, nontechnical” probability that incriminating evidence was involved. 
 Id.
 at 742.

Four years later, the Court held that probable cause is required to invoke the plain view doctrine.  
See
 Arizona v. Hicks, 480 U.S. 321, 326-27, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); Joseph v. State, 807 S.W.2d 303, 308 (Tex.Cr.App. 1991).  In 
Hicks
, a bullet was fired through the floor of an apartment injuring a person in the apartment below.  Officers entered Hicks’s apartment to search for evidence of the shooting.  One officer noticed two sets of expensive stereo equipment that seemed out of place.  Suspecting they were stolen, he moved some of the equipment to record the serial numbers.  He reported the numbers to the station and was advised that a turntable had been taken in an armed robbery.  He seized it without a warrant.  It was later determined that other serial numbers matched stolen items and a warrant was obtained for the remaining items.

The trial court granted the defendant’s motion to suppress and the appellate court affirmed on the basis that obtaining the serial numbers constituted an additional search unrelated to the shooting.  After the Arizona Supreme Court denied review, the State petitioned for certiorari.  The Supreme Court affirmed the appellate court’s decision.  
Id. 
at 329.  It concluded that the mere recording of the serial numbers did not constitute a seizure because it did not meaningfully interfere with Hicks’s possessory interest; however, the moving of the equipment to record the numbers did constitute a search separate and apart from the search for evidence in the shooting.  
Id
. at 324-25.  Taking action by moving the equipment which exposed to view concealed portions of the apartment or its contents produced a new invasion of privacy unrelated to the prior justification that validated the entry.  
Id
. at 325.  The Court noted that the distinction between looking at a suspicious object and moving it even a few inches is “much more than trivial for purposes of the Fourth Amendment.”  
Id
.  “A search is a search” even if it uncovers something as insignificant as serial numbers.  
Id
.

After concluding a search occurred, the Court examined whether it was reasonable under the plain view doctrine.  
Id
. at 326.  Although the State conceded the officer only had reasonable suspicion to believe the stereo equipment was stolen, the Court noted that the higher standard of probable cause would have sustained a seizure of the equipment under the plain view doctrine.   The Court explained:

[d]ispensing with the need for a warrant is worlds apart from permitting a lesser standard of 
cause
 for the seizure than a warrant would require, 
i.e.
, the standard of probable cause.  No reason is apparent why an object should routinely be seizable on lesser grounds, during an unrelated search and seizure, than would have been needed to obtain a warrant for that same object if it had been known to be on the premises.

Id.
 at 327.  The fact that an item comes lawfully within an officer’s plain view cannot, alone, supplant the requirement of probable cause.  
Id.

Here, Officer Coffey was lawfully in a position from which to view the tiny bit of the plastic baggie.  His prior justifications for the search were a valid traffic stop and a search incident to the passenger’s arrest.  He was in the process of issuing a citation to appellant when he noticed the baggie conspicuously located in the crease of the gas cap compartment.  The immediately apparent prong does not require actual knowledge by the officer of incriminating evidence.  
See Brown
, 460 U.S. at 741-42.  It is not essential that the officer’s belief be correct or more likely true than false.  
Id
. at 742.

  The Court of Criminal Appeals has recognized that certain objects not inherently suspicious can become so under certain circumstances.  
See
 
generally
 Gonzales v. State, 648 S.W.2d 684, 686 (Tex.Cr.App. 1983) (balloons containing heroin); Sullivan v. State, 626 S.W.2d 58, 59 (Tex.Cr.App. 1981) (a partially unzipped pouch exposing a dark brown bottle and a clear plastic bag containing a white powder); DeLao v. State, 550 S.W.2d 289, 291 (Tex.Cr.App. 1977) (a red balloon containing heroin); Duncan v. State, 549 S.W.2d 730, 732 (Tex.Cr.App. 1977) (recognizing the popularity of plastic bags as containers for narcotics, but declining to hold that the bag itself, without more, is contraband).
(footnote: 6)  Accordingly, a plastic baggie, under suspicious circumstances, can provide probable cause to invoke the plain view doctrine. 

As previously noted, the evidence established that appellant was stopped in a high crime area for narcotics.  Officer Coffey, in his experience, could conceive of no other reason for a plastic baggie to be visible in the crease of the gas cap compartment other than to conceal narcotics.  Given the facts and circumstances within his knowledge, 
Coffey had probable cause to believe the plastic baggie presented evidence of a crime sufficient to satisfy the immediately apparent prong.  
See
 
Torres
, 2005 WL 3310462, at *2. 

The act of opening the locked gas cap compartment on his own volition because he knew it was a common hiding area for narcotics is analogous to the officer in 
Brown
 knowing that balloons are frequently used to carry narcotics.  The tip of the baggie exposed in the crease of the gas cap compartment was in plain view just as the knotted balloon was in 
Brown
.  Neither the baggie nor the balloon showed any contraband until further investigation based on probable cause.  We conclude that under the plain view doctrine, the search of the gas cap compartment was constitutionally valid.  The trial court did not abuse its discretion in denying appellant’s motion to suppress.  Appellant’s sole issue is overruled. 

Accordingly, the trial court’s judgment is affirmed.

Don H. Reavis

    Justice

Quinn, C.J., concurs in result.

Publish. 

FOOTNOTES
1:
Chadwick
 and 
Sanders
 pre-date 
Ross
 and its holding that presented with probable cause, officers may search all compartments and containers of an automobile.

2:
Overruling Castillo v. State, 818 S.W.2d 803 (Tex.Cr.App. 1991), to the extent it required both personal knowledge 
and
 reasonably trustworthy information.  (Emphasis added).

3:
The record does not disclose Coffey’s training nor his years of experience as a police officer.

4:
The State relies on 
Parker
, and appellant, in his reply brief, questions the reliance on it and other unpublished cases.  Unpublished cases have no precedential value but may be cited as not designated for publication.  Tex. R. App. P. 47.7.

5:
Under 
Coolidge
, the plain view doctrine also required that discovery of incriminating evidence be inadvertent.  That requirement was abandoned in 
Horton
, 496 U.S. at 139-40.

6:
These cases were decided before the Supreme Court’s 1983 decision in
 Brown
, which scaled down the “immediately apparent” requirement.  460 U.S. at 741-42.